**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **ANGIE M PERDOMO REYNAUD**, | |
| *Petitioner*, | No. 26-cv-05905 |
| v. | **MEMORANDUM ORDER** |
| **TODD LYONS, *et al.***, | |
| *Respondents*. | |

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court by way of a Petition for Writ of Habeas Corpus filed by Petitioner Angie M. Perdomo Reynaud on May 22, 2026. (ECF No. 1). On May 26, 2026, the Court ordered Respondents to show cause why the relief requested in the Petition should not be granted. (ECF No. 2). Respondents filed their response on May 29, 2026, (ECF No. 8), and Petitioner filed a reply on May 30, 2026, (ECF No. 9). The Court held a Motion Hearing on June 1, 2026. (ECF No. 12). Following oral argument, and for the reasons stated on the record, the Court ordered Petitioner's immediate release from custody. (ECF No. 13). The Court now issues this Memorandum Order to supplement the reasons stated on the record.

## I.   BACKGROUND

Petitioner is a native and citizen of Honduras. (Pet., ECF No. 1 at ¶ 5). She entered the United States in 2006 with her then eight-year-old daughter and twelve-year-old sister after fleeing Honduras because she feared for her safety and the safety of her family. (*Id.* at ¶ 15). Upon arrival, Petitioner provided immigration officials with the New York address where she intended to live with family members. (*Id.*). Petitioner alleges that, despite residing at that address, she never

received oral or written notice regarding a master calendar hearing, was never told that she was required to appear in immigration court, and was never told how to update her address with the court. (*Id.* at ¶ 16). On August 15, 2006, the San Antonio Immigration Court held a master calendar hearing, and an Immigration Judge ordered Petitioner removed *in absentia* when she did not appear for that hearing. (*Id.*). Petitioner alleges that she had no notice of that hearing and did not learn of the 2006 removal order until November 7, 2025, when she was detained by Immigration and Customs Enforcement ("ICE"). (*Id.*).

Following her arrival in the United States, and for nearly twenty years, Petitioner lived openly in New York, raised her children, and never attempted to evade immigration authorities. (*Id.*). She alleges that, during her time in the United States, she endured extensive domestic violence by two abusive partners, including physical abuse, threats, and an assault in March 2023 that led her to contact law enforcement and cooperate with the District Attorney. (*Id.* at ¶ 17). Because of that abuse and her cooperation with law enforcement, Petitioner filed a petition for U Nonimmigrant Status. (*Id.*). In June 2024, Petitioner obtained U-visa certification from the Bronx District Attorney's Office, and in August 2024 she filed her U-visa petition with United States Citizenship and Immigration Services ("USCIS").[1] (*Id.* at ¶ 18).

On January 23, 2026, despite knowing it had a final order of removal as to Petitioner, USCIS issued a Bona Fide Determination Notice finding that Petitioner's U-visa petition was bona fide and that she warranted a favorable exercise of discretion to receive employment authorization

---

[1]   A U-visa is a form of immigration relief available to certain noncitizen victims of qualifying criminal activity who have suffered substantial physical or mental abuse and have been, are being, or are likely to be helpful to law enforcement or other government officials in the investigation or prosecution of that criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14(b). To apply, the noncitizen must submit, among other materials, a certification from a qualifying law-enforcement agency confirming the applicant's helpfulness. *See* 8 U.S.C. § 1184(p)(1); 8 C.F.R. § 214.14(c)(2)(i).

and deferred action. (*Id.* at ¶ 19). On the same date, USCIS issued Petitioner an Employment Authorization Document under the C14 deferred-action category, valid for four years. (*Id.*). Petitioner alleges that the grant of deferred action remains in effect and has not been revoked. (*Id.*). Petitioner has also filed two motions to reopen the 2006 *in absentia* removal order and a notice of appeal from the denial of her second motion to reopen, both of which remain pending before the Board of Immigration Appeals ("BIA"). (*Id.* at ¶ 20).

Petitioner has been detained at Delaney Hall Detention Facility in Newark, New Jersey, since November 7, 2025. (*Id.* at ¶¶ 5, 21). On May 4, 2026, Petitioner's counsel submitted a written request for release in advance of Petitioner's Post-Order Custody Review, which was held on May 6, 2026. (*Id.* at ¶ 21). In support of release, Petitioner submitted, among other things, her Bona Fide Determination Notice, employment authorization documents, proof of her pending BIA appeal, and orders of protection and police reports. (*Id.*). Petitioner alleges that Respondents did not issue a decision on her request for release, or provide a reasoned justification for continued detention following that custody review. (*Id.*).

Petitioner alleges that she poses neither a flight risk nor a danger to the community. (*Id.* at ¶ 22). She has lived in the Bronx for nearly two decades, is the sole caregiver for four United States citizen minor children, cooperated extensively with law enforcement against her abuser, has no criminal record, and has been deemed eligible for deferred action and employment authorization by USCIS. (*Id.*). At the time the Petition was filed, Petitioner had been detained for more than six months under her 2006 removal order. (*Id.* at ¶¶ 3, 21).

## II.    LEGAL STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."

§ 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025).

Where a noncitizen is subject to a final order of removal, detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526–29 (2021). Section 1231 provides for a ninety-day removal period, during which the Government "shall remove" the noncitizen and detention is mandatory. § 1231(a)(1)(A), (a)(2). After that removal period expires, the statute authorizes continued detention of certain categories of noncitizens, including noncitizens who are inadmissible, removable on certain grounds, or determined to present a risk to the community or unlikely to comply with the order of removal. § 1231(a)(6).

However, § 1231(a)(6) does not authorize indefinite detention. *Zadvydas*, 533 U.S. at 689. To avoid serious constitutional concerns, the Supreme Court has construed § 1231(a)(6) to authorize detention only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* The Court recognized six months as a presumptively reasonable period of post-removal-order detention. *Id.* at 701. After that six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*; *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (applying *Zadvydas* to inadmissible noncitizens detained under § 1231(a)(6)).

4

Here, Petitioner was detained in New Jersey at the time she filed her Petition and challenges the legality of her continued detention under § 1231(a)(6) on federal statutory and constitutional grounds. (Pet., ECF No. 1 at ¶¶ 5, 21, 33–55). The Court therefore has jurisdiction under § 2241 to consider her claims.[2]

## III.   DISCUSSION

### A.   Petitioner's Claim Is Not Premature Because the Six-Month *Zadvydas* Period Runs from the Beginning of Her § 1231 Detention

Respondents first argue that the Petition is premature. Although Respondents acknowledge that Petitioner had been detained for approximately 203 days by the time they filed their response, they nevertheless contend that Petitioner "has only been detained for less than four months in excess of the post 90-day removal period" and argue that the ninety-day removal period must be excluded from the six-month presumptively reasonable period recognized in *Zadvydas*. (Gov't Resp., ECF No. 8 at 4). That argument is unsupported and incorrect.

*Zadvydas* does not hold that the Government may detain a noncitizen for the ninety-day removal period and then for an additional six months before continued detention becomes subject

---

[2] Respondents argue that 8 U.S.C. § 1252(b)(9) strips this Court of jurisdiction because, in their view, Petitioner's reliance on her pending U-visa petition and unrevoked grant of deferred action necessarily challenges the lawfulness of executing her removal order and must be raised through a petition for review. (Gov't Resp., ECF No. 8 at 4–5). The Court disagrees. Petitioner does not ask this Court to review, vacate, or stay the 2006 removal order, nor does she challenge the decision to seek removal or the process by which removability was determined. Rather, she challenges whether her continued detention remains authorized under § 1231(a)(6) where unrevoked deferred action means there is no significant likelihood of removal in the reasonably foreseeable future. That is a detention challenge cognizable in habeas and collateral to the removal process. *See Zadvydas*, 533 U.S. at 687–88; *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018); *Khalil v. President of the United States*, 164 F.4th 259, 274–75 (3d Cir. 2026); *Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026); *see also Immig. Ctr. for Women & Children v. Noem*, No. 25-09848, 2026 WL 1455004, at *13 (C.D. Cal. May 20, 2026) (holding § 1252(b)(9) did not bar challenge to ICE policy allegedly disregarding USCIS grants of deferred action because the claims were collateral to removal proceedings).

to meaningful judicial review. Rather, *Zadvydas* construed § 1231(a)(6) to authorize detention only for a period reasonably necessary to effect removal and recognized "six months" as the presumptively reasonable period of post-removal-order detention. *Zadvydas*, 533 U.S. at 689, 701. After that six-month period, once a noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

Nor do Respondents' cited cases support their position. Each applied the ordinary *Zadvydas* six-month framework and dismissed the petition as premature because the petitioner had not yet been detained for six months under § 1231(a)(6). *See Deshati v. Noem*, No. 25-15940, 2025 WL 3204227, at *1 (D.N.J. Nov. 17, 2025) (dismissing § 1231 detention challenge as premature where petitioner had been detained by ICE for less than two months); *Fabian A. v. Dep't of Homeland Sec.*, No. 21-1384, 2021 WL 3486905, at *2 (D.N.J. Aug. 9, 2021) (dismissing petition as premature because petitioner was "still within the presumptively reasonable six-month period"); *Alan Abiel Islas O. v. Green*, No. 18-08020, 2018 WL 10562958, at *2 (D.N.J. Sept. 13, 2018) (dismissing petition as premature where "the presumptively reasonably six-month period for removal ha[d] not yet expired"). None held—or even suggested—that the Government may exclude the ninety-day removal period from the six-month *Zadvydas* presumption and thereby require a noncitizen detained under § 1231 to wait nine months before seeking habeas relief.[3]

Because Petitioner was detained under § 1231 beginning on November 7, 2025, and because she filed this Petition after more than six months of such detention, she was entitled to

---

[3]   At oral argument, the Government fared no better. When pressed by the Court, the Government could not identify any language in *Deshati*, *Fabian A.*, or *Alan Abiel Islas O.* supporting its position, nor could it identify any other authority for its seemingly novel argument that a noncitizen detained under § 1231 must wait nine months—not six—before seeking habeas relief.

seek habeas review under *Zadvydas*. The Government and its counsel are reminded that they stand in the same position as all litigants and counsel before this Court with respect to Federal Rule of Civil Procedure 11. By submitting papers to the Court, counsel certifies that the Government's legal contentions are "warranted by existing law or by a nonfrivolous argument" for modifying existing law, and that its factual contentions have or likely will have evidentiary support. Fed. R. Civ. P. 11(b)(2)–(3). Here, Respondents identify no statutory, regulatory, or precedential basis for excluding the first ninety days of detention from the six-month period, and the Court is aware of none. Respondents' prematurity argument is rejected, and Respondents shall not renew it in future filings absent citation to controlling authority or a good-faith basis for arguing that *Zadvydas* permits the Government to exclude the ninety-day removal period from the six-month presumptively reasonable period of post-removal-order detention.

> **B.**      **Respondents Have Not Rebutted Petitioner's Showing That Removal is Not Significantly Likely in the Reasonably Foreseeable Future**

Having readily determined that Petitioner's claim is not premature, the Court next considers whether Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and, if so, whether Respondents have rebutted that showing. *See Zadvydas*, 533 U.S. at 701. The Court concludes that Petitioner has made the required showing and that Respondents have not rebutted it.

Petitioner's showing rests principally on her unrevoked grant of deferred action. USCIS granted Petitioner deferred action on January 23, 2026, after determining that her U-visa petition was bona fide and that she warranted a favorable exercise of discretion. (Pet., ECF No. 1 at ¶ 19). Petitioner alleges that this grant of deferred action remains in effect and has not been revoked. (*Id.*). Respondents do not dispute that USCIS granted Petitioner deferred action, nor do they contend that the grant has been revoked. (Gov't Resp., ECF No. 8 at 2, 4–5).

Although the Third Circuit does not appear to have addressed this precise question, Petitioner cites persuasive authority that an unrevoked grant of deferred action prevents removal while it remains in effect. (*See* Pet., ECF No. 1 at ¶¶ 29–30). For example, in *Sepulveda Ayala v. Bondi*, the court explained that deferred action reflects the Government's formal determination to defer removal and relied on *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 484 (1999), where the Supreme Court described deferred action as an exercise of discretion in which "no action will thereafter be taken" to proceed against an otherwise removable noncitizen. 794 F. Supp. 3d 901, 912–14 (W.D. Wash. 2025). Applying that understanding in the § 1231 context, the court in *Nevarez Jurado v. Freden* held that an unrevoked grant of deferred action protected the petitioner from removal while it remained in effect and therefore established no significant likelihood of removal in the reasonably foreseeable future. 813 F. Supp. 3d 376, 389–91 (W.D.N.Y. 2025). Those decisions are persuasive here. Because USCIS has affirmatively granted Petitioner deferred action and that grant remains unrevoked, Respondents have not shown that Petitioner's removal is significantly likely in the reasonably foreseeable future. *See Espinoza Cruz v. English*, No. 25-919, 2025 WL 3676992, at *4 (N.D. Ind. Dec. 18, 2025) (finding removal was not reasonably foreseeable because petitioner had been granted deferred action and further noting that there was no reason to treat deferred action granted to U visa applicants differently than deferred action in other contexts); *Medina Lopez v. Raycraft*, No. 26-10784, 2026 WL 1370583, at *12 (E.D. Mich. May 15, 2026) (finding removal was not reasonably foreseeable because petitioner had been granted deferred action); *Chogllo v. Warden of McCook Detention Ctr.*, No. 26-54, 2026 WL 393137, at *1 (D. Neb. Feb. 11, 2026) ("[W]here a detainee's deferred action remains active, he is protected from removal, and there is no significant likelihood of his removal in the reasonably foreseeable future.").

Respondents do not meaningfully address *Sepulveda Ayala*, *Nevarez Jurado*, or any of the other cases cited by Petitioner on the merits. (*See* Gov't Resp., ECF No. 8 at 5 n.3). Instead, they argue that Petitioner cannot show removal is not reasonably foreseeable because "ICE recently completed a post-order custody review and the outcome of that review is currently pending," and because "ICE has obtained a travel document for Petitioner and stands ready to effectuate her removal order if the Court lifts the injunction." (*Id.* at 4). These assertions lack merit and neither assertion rebuts Petitioner's showing.

First, the fact that ICE conducted a Post-Order Custody Review does not establish that removal is reasonably foreseeable. To the contrary, Respondents acknowledge that, weeks after that review, "the outcome of that custody review is still pending and a determination has not yet been issued." (*Id.* at 2). A pending custody review says nothing about whether, when, or how removal can be effectuated, particularly where Petitioner's grant of deferred action remains unrevoked.

Second, Respondents' assertion that ICE "obtained a travel document" is, at best, imprecise if not a misrepresentation of the factual evidence. The document on which Respondents rely appears to be Petitioner's Honduran passport. (Ex. G, ECF No. 8-7). That is not evidence that ICE "obtained a travel document" from the Honduran government to effectuate Petitioner's removal. Nor is it the type of evidence courts typically expect or the Government ordinarily relies upon when the Government claims that removal is imminent or reasonably foreseeable, such as an affidavit from an ICE official, communications with foreign authorities, a scheduled removal date, a removal itinerary, or some other recently issued travel documentation or concrete timeline. The passport also appears to have been issued in July 2022, well before Petitioner's November 2025 arrest and months before the Government filed its response. (*Id.*). As such, it clearly was not

9

obtained by ICE. Indeed, if Respondents have relied on that passport all along, Petitioner could have been removed upon her detention in November 2025. And Respondents provide absolutely no explanation for why they have failed to make any efforts whatsoever to effectuate her removal. And certainly, its existence does not explain why removal is now reasonably foreseeable. If anything, it underscores the absence of evidence that the Government is presently able to or intends to remove Petitioner notwithstanding her unrevoked deferred action.

At bottom, Respondents offer no meaningful legal argument as to how Petitioner's removal could be reasonably foreseeable given her unrevoked grant of deferred action. And factually, Respondents offer only a pending custody review and a preexisting passport, together with the conclusory assertion that ICE "stands ready" to remove Petitioner. (Gov't Resp., ECF No. 8 at 2, 4). That is plainly insufficient to rebut Petitioner's showing under *Zadvydas*. Because Petitioner's deferred action remains unrevoked, and because Respondents have not provided competent evidence establishing a significant likelihood of removal in the reasonably foreseeable future, continued detention under § 1231(a)(6) violates Petitioner's due process rights.[4]

*     *     *     *     *

For the foregoing reasons,

**IT IS HEREBY** on this <u>10th</u> day of <u>June</u>, 2026,

---

[4] The Court also notes that, on May 20, 2026, a federal district court certified a nationwide class that appears to include Petitioner and stayed DHS's 2025 Guidance rescinding prior policy protections for noncitizens with pending victim-based immigration petitions. *See generally Immigr. Ctr. for Women & Child. v. Noem*, No. 25-09848, 2026 WL 1455004 (C.D. Cal. May 20, 2026). Petitioner raised that point in reply, arguing that she falls within the certified Deferred Action Class. (ECF No. 9 at 3). Respondents did not meaningfully address the issue. Indeed, when questioned at oral argument, counsel for Respondents represented that she had not read the *Noem* decision or order and therefore could not say whether the nationwide stay entered in that case foreclosed their position here. That concession is notable. On the present record, Petitioner appears to be a member of the Deferred Action Class, and Respondents have offered no basis to conclude otherwise.

**ORDERED** that Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), is **GRANTED**; and it is further

**ORDERED** that the Court's June 1, 2026 Order directing Petitioner's immediate release and setting forth the conditions governing that release remains in full force and effect, (ECF No. 13); and it is further

**ORDERED** that, for avoidance of doubt, Respondents remain **ENJOINED** from rearresting or otherwise detaining Petitioner under 8 U.S.C. § 1231(a) based on the same final order of removal unless and until: (1) Petitioner's grant of deferred action is revoked after proper notice and an opportunity to be heard; or (2) Respondents establish, after proper notice and an opportunity to be heard, that Petitioner presents a flight risk or danger sufficient to justify renewed detention. In the latter circumstance, Respondents shall bear the burden of proof by clear and convincing evidence; and it is further

**ORDERED** that any future detention of Petitioner must comply with all statutory and constitutional requirements, including the identification of a lawful statutory basis for detention and the provision of adequate procedural and substantive due process; and it is further

**ORDERED** that, to the extent Respondents re-arrest or otherwise re-detain Petitioner under any statutory authority, including but not limited to § 1231, this Court shall retain jurisdiction over the matter, and Petitioner may move to reopen these proceedings before this Court without filing a new habeas petition; and it is further

**ORDERED** that Petitioner shall advise the Court whether she intends to file any application for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, by June 15, 2026, consistent with the Court's June 1, 2026 Order. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 421–22 (3d Cir. 2026); and it is finally

11

**ORDERED** that the Clerk of the Court shall mark this matter **CLOSED.**


**CHRISTINE P. O'HEARN**
**United States District Judge**